[Civ. Nos. 33995, 34339. First Dist., Div. Four. Aug. 19, 1974.]

TRANSCENTURY PROPERTIES, INC., et al.,
Plaintiffs, Cross-defendants and Respondents, v.
THE STATE OF CALIFORNIA et al.,
Defendants, Cross-complainants and Appellants.

[Civ. No. 33910. First Dist., Div. Four. Aug. 19, 1974.]

THE STATE OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondents.
TRANSCENTURY PROPERTIES, INC., et al., Real Parties in Interest.

**838**

**COUNSEL**

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick E. Walston, Donatas Januta and Richard C. Jacobs, Deputy Attorneys General, for Defendants, Cross-complainants and Appellants and for Petitioners.

Laurens H. Silver as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants and Petitioners.

Anderson, McDonald, Belden & Kelly and Lester M. Belden for Plaintiffs, Cross-defendants and Respondents and for Real Parties in Interest.

Fulop, Rolston, Burns & McKittrick and Marvin G. Burns as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Respondents and Real Parties in Interest.

## OPINION

**CHRISTIAN, J.**—The People of the State of California appeal, and in a related proceeding seek a writ of prohibition, to test several actions of the superior court in regard to a proposed seaside development in Sonoma County. The litigation commenced with Transcentury Properties, Inc. (owner and developer of the "Bodega Harbour" development on Bodega Bay), the Bodega Harbour Homeowners' Association, and three owners of lots in the development sought the following relief:

(1) A declaration that the project is exempt from the California Coastal Zone Act of 1972 (hereinafter "the Act") (Pub. Resources Code, § 27000 et seq.) because Transcentury had acquired vested rights before the Act became effective;

(2) A declaration that the regulations promulgated by the California Coastal Zone Conservation Commission (hereinafter "state commission"), which establish a procedure for deciding such claims of exemption, were not authorized by the Act (see Cal. Admin. Code, tit. 14, §§ 13700-13707);

(3) A declaration that the Act and the regulations are unconstitutional because they deprived the plaintiffs of their property without due process of law; and

(4) An order enjoining the State of California and the North Central Coast Regional Commission (hereinafter "regional commission"), which had denied part of Transcentury's claimed exemption, from requiring re-spondents to obtain any new or additional permits for the development.

The court issued a preliminary injunction restraining the state agencies from "bringing any action . . . the object of which is to stop, hinder, or delay, directly or indirectly, construction work at, or in connection with, the 'Bodega Harbour' development." The state then moved to dissolve the

preliminary injunction. An answer was filed, together with a cross-complaint seeking an injunction prohibiting respondents from continuing construction of the Bodega Harbour development.

The trial court indicated that it would treat respondents' complaint as a petition for a writ of mandate; it denied appellants' motion to dissolve the preliminary injunction, and it denied appellants' motion for a preliminary injunction pursuant to the cross-complaint. Appellants have appealed from these orders. The trial court also determined that respondents could depose staff members of the regional commission in order to discover the basis for the commission's actions. The state and regional commissions have sought a writ to restrain the trial court from receiving in evidence anything except the administrative record of the commission and to terminate discovery.

Some time prior to June 1969, Transcentury made plans to develop a residential community on land that it owned on Bodega Bay. The planned community consists of four units of lots for single family dwellings, one unit of condominiums, a golf course, a beach and club house, a yacht harbor, and a sewage treatment plant. In October 1969, the Sonoma County Planning Commission approved a tentative subdivision map of the proposed development subject to numerous conditions. Later, the board of supervisors granted a 2-year extension, but attached 44 conditions. On July 6, 1971, the board of supervisors approved the final subdivision map for Unit No. 1 of the single family residential lots; the board approved the final subdivision map for Unit No. 2 on January 29, 1973. Since then some of the development work has commenced.

After the passage of the Coastal Zone Act, Transcentury applied to the regional commission for an exemption from the permit requirement of the Act for its Bodega Harbour development. The regional commission concluded that Transcentury had a vested right to complete Unit 1 of the subdivision, part of the sewage treatment plant necessary to serve Unit 1, the beach and country club, and the clubhouse at the yacht club; permits were necessary for the remainder. On appeal, the state commission reached the same decision as the regional commission, although the staff of the state commission recommended that Transcentury be granted exemptions for the model homes and the golf course. The staff reached its recommendation for the exemptions by using February 1, 1973, as the relevant date for determining the existence of vested rights but the state commission, using November 8, 1972, as the relevant date, on advice of the Attorney General, chose not to follow the staff's recommendation.

### The Writ of Prohibition

The Attorney General asserts that unless the writ of prohibition is granted, taking depositions of staff members of the state and regional commissions and requiring staff members to appear in court "will impose an intolerable burden on the operations of the Commissions, creating a situation where they will be unable to perform their statutory duties and responsibilities." Respondents, who are the real parties in interest to the petition, claim that prohibition is not an appropriate remedy and that discovery of and testimony by commission members and staff is proper.

The trial court had concluded that the reasoning process of these persons was a proper subject for discovery. The court also determined that, pursuant to Code of Civil Procedure section 1094.5, subdivision (d), evidence beyond the administrative record was admissible in the trial court because evidence had been improperly excluded from the administrative record. It based its conclusion that evidence had been improperly excluded on the fact that both the regional and state commissions erroneously used the date of November 8, 1972, in determining whether Transcentury had a vested right without considering the additional test whether substantial construction had been performed on the project by February 1, 1973, as required by *San Diego Coast Regional Com.* v. *See the Sea, Limited* (1973) 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129].

Respondents argue that, regardless of the propriety of the trial court's intended course of action, the trial court has not acted and hence prohibition is not a proper remedy. If a court makes an order or ruling in excess of jurisdiction (conduct which in itself indicates an intention to act in accordance with the order or ruling), a writ of prohibition will issue. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288-291 [109 P.2d 942, 132 A.L.R. 715].) Therefore, prohibition is a proper remedy in this case. (See *State of California* v. *Superior Court* (1971) 16 Cal.App. 3d 87 [93 Cal.Rptr. 663].)

Respondents' complaint raises three issues: (1) whether Transcentury is exempt from the permit requirements of the Act because it has acquired vested rights; (2) whether the Act and regulations are unconstitutional because they deprive respondents of their property without due process of law; and (3) whether regulations promulgated by the state commission are not authorized by the Act. Respondents agree that the first issue is properly litigated under the provisions of section 1094.5 of the Code of Civil Procedure (see *Parker* v. *Board of Trustees* (1966) 242 Cal.App. 2d 614, 617-618 [51 Cal.Rptr. 653]), but they argue that the other two issues are independent of the review of the state commission's decision and

may be litigated in an action for declaratory judgment or for traditional mandate pursuant to Code of Civil Procedure section 1084 et seq. Therefore, argue respondents, the trial court is not limited to reviewing the administrative record in accordance with section 1094.5, at least with respect to the second and third issues raised in the complaint, but may admit whatever evidence is relevant to those issues.

Respondents' challenge to the constitutionality of the Act and the regulations is a challenge to their constitutionality as applied to this factual situation. Respondents claim that their property is taken without due process of law because Transcentury possesses vested rights, but this constitutional challenge is only another way of phrasing respondents' challenge to the decision of the state commission. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 251-252 [115 Cal.Rptr. 497, 524 P.2d 1281].) Respondents' contention that regulations promulgated by the state commission are not authorized by the Act raises a legal question. (*Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 87 [88 Cal.Rptr. 907, 43 A.L.R.3d 537].) There is no need for discovery with respect to this contention. (See *State of California* v. *Superior Court,* 12 Cal.3d at p. 256.) Therefore, the presentation of evidence in the trial court—and the related issue of discovery—is regulated by the terms of section 1094.5 of the Code of Civil Procedure.

Section 1094.5 limits a court to considering the entire agency record unless "the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the [administrative] hearing. . . ." (Code Civ. Proc., § 1094.5, subd. (d); *State of California* v. *Superior Court, supra,* 12 Cal.3d at p. 256.) ▇▇▇ Here, the trial court concluded that it could admit evidence not in the administrative record because the commission improperly excluded evidence. (See Code Civ. Proc., § 1094.5, subd. (d).) It determined that evidence was improperly excluded from the state commission's use of the wrong data in determining Transcentury's claim of vested rights. But the administrative record shows that evidence was admitted before the commission of activity that transpired up to February 1, 1973, the relevant date established in *San Diego Coast Regional Com.* v. *See the Sea, Limited, supra,* 9 Cal.3d at p. 890; the staff of the state commission made its recommendation on the basis of the evidence of the events that occurred up to February 1, 1973. Therefore, the trial court's determination that the commission improperly excluded evidence is incorrect. Because respondents failed to show that the evidence sought by discovery was improperly excluded by the state commission or that the evidence could not have been produced at the administrative hearing with the exercise of reasonable

diligence, there is no basis for allowing discovery. (*State of California* v. *Superior Court, supra,* 16 Cal.App.3d at p. 94; *Beverly Hills Fed. S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 318, 324 [66 Cal. Rptr. 183].) For that reason, the writ of prohibition will issue.

Should respondents seek a discovery order conforming to the requirements of section 1094.5, subdivision (d), the court must be mindful of the prohibition against probing the mental processes of commission and staff members. (*State of California* v. *Superior Court, supra,* 12 Cal.3d at pp. 257-258.)

## The Appeal

■ Appellants claim that the trial court should be directed to issue an injunction halting construction and preserving the status quo pending judicial resolution of the issues presented in this case or it will be impossible to preserve the natural state of the land. Respondents contend that the trial court did not abuse its discretion in making these orders because respondents were suffering irreparable injury.

■ A preliminary injunction is a provisional remedy used to preserve the status quo pending a determination of the merits of a case; its grant or denial does not amount to adjudication on the merits. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]; 2 Witkin, Cal. Procedure (1970) Provisional Remedies, § 47, p. 1496.) ■ In deciding whether to issue a preliminary injunction, a court should consider the likelihood that the plaintiff may ultimately prevail in the case and should determine the relative hardship to the parties resulting from denial of the injunction. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 528; 2 Witkin, Cal. Procedure, *supra,* Provisional Remedies, § 73, p. 1511.)

■ Respondents are losing money by reason of the halt in construction but, if construction is resumed, appellants' rights to the amenities of the coastal area will be irretrievably lost. (See Pub. Resources Code, § 27001 [public policy of preserving coastal zone].) As a practical matter, once a project of the size and scope of Bodega Harbour is completed, the land cannot be restored to its natural state. Consequently, the relative hardships to the parties compel the conclusion that construction must be halted pending final judicial determination of the controversy. (See *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 536-539 [72 Cal.Rptr. 790, 446 P.2d 790]; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 703-705 [104 Cal.Rptr. 197].) Moreover, the agency's action comes before the court

with a presumption of correctness and regularity. (*California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 810 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].)

Appellants, claiming that there are no issues of fact, request this court to adjudicate the merits of the issues raised in respondents' complaint. Respondents urge that factual issues are interwoven with legal ones and that they are entitled to a hearing on the merits in the trial court before proceeding to appeal.

█ Since the state commission is not an agency of constitutional origin which has been granted limited judicial power by the Constitution, the trial court is authorized to make an independent judgment on the evidence only if the commission's decision "affects a right which has been legitimately acquired or is otherwise 'vested,' and . . . is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' . . . " (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].)

Here, respondents' asserted right is fundamental; it derives from the constitutional guarantee that property may not be taken without due process of law. (*Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520, 530-533 [41 Cal.Rptr. 190]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 783-788 [194 P.2d 148].) The central question presented in this case is the extent of respondents' vested right. Consequently, the trial court must make its own independent judgment on the evidence.

The Attorney General claims that the facts are undisputed, and suggests that this court should conclusively dispose of the case. It is true that neither party disputes any facts. But the legal question whether respondents possess vested rights is a mixed question of law and fact, involving conflicting inferences that may be drawn from the basic facts. For this reason, it is proper for the trial court to make an initial determination which can then be reviewed by the appellate court. (See *Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 524 [115 Cal.Rptr. 59].) The parties appear desirous of an expeditious final adjudication. Subject to the receipt of any new evidence that may be admissible under Code of Civil Procedure section 1094.5, all of the facts that will be considered by the trial court are in the administrative record; the legal issues have already been set out in the appellate briefs. Consequently, the trial court should be able promptly to render judgment.

A peremptory writ of prohibition will issue directing the superior court to vacate its order allowing discovery. The preliminary injunction issued August 7, 1973, and modified August 29, 1973, is dissolved. The trial court will issue a preliminary injunction pursuant to appellant's cross-complaint enjoining the construction of the Bodega Harbour development, except for the portion of the development exempted by the state commission, the golf course and the 10 model homes. The writ of supersedeas is dissolved except for the stay of construction, which shall dissolve when the preliminary injunction staying construction is issued.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied September 18, 1974.