[Civ. No. 53547. Second Dist., Div. One. Nov. 17, 1978.]

LOS ALAMITOS GENERAL HOSPITAL, INC.,
Plaintiff and Respondent, v.
JEROME A. LACKNER, as Director, etc., et al.,
Defendants and Appellants.

418

**COUNSEL**

Evelle J. Younger, Attorney General, John J. Klee, Jr., Assistant Attorney General, Anne S. Pressman and James E. Ryan, Deputy Attorneys General, for Defendants and Appellants.

Weissburg & Aronson, Carl Weissburg, Albert C. Mour, Patric Hooper and J. Dianne Brinson for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—This appeal from a judgment in administrative mandamus turns upon the applicable standard of judicial review of an

administrative determination denying a "grandfather" exemption from the requirement of State Department of Health[1] approval of a hospital expansion project. We conclude that the appropriate standard is the "substantial evidence test"; i.e., the findings of the administrative agency must be accepted if supported by substantial evidence. We conclude, also, that the administrative findings are inadequate to meet the standard established by *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]. Accordingly, we reverse a trial court judgment mandating the Department of Health to grant petitioner hospital's application for exemption and remand the matter to the trial court with direction to return the case to the administrative agency for appropriate findings of fact.

*Facts*

Los Alamitos General Hospital is a licensed general acute care hospital operating in Los Angeles County. In the latter part of 1974, the hospital's board of directors initially considered expanding the hospital's outpatient radiology facility. On January 22, 1975, an architect was engaged by the hospital to estimate the cost of expanding the existing physical plant and to prepare construction documents necessary to secure the approval of state and local agencies, including the Department of Health. The architect was retained on May 8, 1975, to prepare final plans and specifications for the expansion of the radiology facility. The remodeling and expansion plan of the radiology facility included the construction of new X-ray rooms and the construction of new doctors' offices adjacent to the largest of the new X-ray rooms, "x-ray 5." On November 12, 1975, application for approval of the plans was made to the Department of Health which granted the application on January 27, 1976. Construction began in April of 1976 and was approximately 80 percent complete by September of that year.

The construction plans and specifications did not indicate where specific articles of radiology equipment were to be installed. The hospital, however, did plan to relocate existing equipment and to acquire new equipment for the expanded facility. Major articles of new radiology equipment purchased prior to September of 1976 were three Picker Corporation X-ray generators and a Kodak film processor. The other

---

[1] Effective July 1, 1978, the State Department of Health was redesignated the State Department of Health Services. (Health & Saf. Code, § 20.)

major article of new equipment, an "EMI" full-body scanner which is the subject of this appeal, was not ordered prior to September of 1976.

Effective September 9, 1976, the Legislature modified the then existing statutory scheme for Department of Health approval of hospital construction and expansion. The construction of new hospital facilities or the expansion or conversion of existing facilities from that date onward is permitted only upon the grant of a "certificate of need." (Health & Saf. Code, § 437.10.) The statute contains a "grandfather" exemption for projects which commenced prior to the effective date of the legislation and which meet other statutory criteria. (Health & Saf. Code, § 437.11.)

Thus on September 9, 1976, the uncompleted expansion of the hospital's outpatient radiology facility became subject to the requirement that the hospital either establish its right to the "grandfather" exemption or obtain a new approval for the expansion from the Department of Health based upon a showing of public need for the expansion. (Health & Saf. Code, §§ 437.10, 438-438.13.) On November 8, 1976, the hospital filed with the Department of Health a timely application for exemption from the certificate of need requirements pursuant to the "grandfather" provision of Health and Safety Code section 437.11. The application sought exemption for the remodeling and expansion of the physical plant, the relocation of existing equipment, and the acquisition of new radiology equipment to be installed in the expanded facility. The three Picker Corporation X-ray generators, the Kodak film processor, and the full-body scanner were identified in the application as articles of new equipment included in the expansion project.

The application included a certified cost estimate for the expansion project of $929,323.05. The amount actually incurred or committed prior to September 9, 1976, was listed as $923,263.04. Not included in the cost estimate was the full-body scanner.

The Department of Health "severed" the full-body scanner from the application. A certificate of exemption excluding the full-body scanner was granted on January 4, 1977. The Department of Health set a hearing pursuant to Health and Safety Code section 437.11, subdivision (a), to determine if the full-body scanner qualified for a certificate of exemption.

The hearing was conducted by a hearing officer. Evidence taken by the hearing officer supports either of two conflicting factual inferences. The

omission of the full-body scanner from the hospital's cost estimate and a very amorphous scheme to acquire it as recorded in hospital corporate and committee records support the ultimate fact that the hospital did not establish the requirement for exemption because the scanner was not included in a project commenced prior to September 9, 1976. (Health & Saf. Code, § 437.11.) Testimony of hospital personnel, if accepted as credible, supports the opposite conclusion.

The hearing officer prepared a proposed decision which included findings of fact and conclusions of law. The findings of fact did not include a finding that the scanner was a separate project. They merely stated, "The project was for the acquisition of an EMI Full Body Scanner." Treating the scanner acquisition as the project at hand, the hearing officer found: (1) the scanner could be considered for an exemption because it was not formerly subject to review; (2) no commitment of financial obligation was incurred prior to September 9, 1976; and (3) the scanner project was not commenced prior to September 9, 1976, as defined in title 22, California Administrative Code, section 90603, subdivision (e)(3)(A). The hearing officer's conclusions of law determined that the scanner did not qualify for an exemption as a separate project. He ordered the application denied. The hearing officer's proposed decision was adopted by the Department of Health.

The hospital filed a petition for writ of administrative mandate. The superior court, after considering the administrative record, concluded that under either the independent judgment or substantial evidence standards of review the department's "implied" finding that the scanner was not a part of the hospital's expansion project prior to September 9, 1976, was not supported by the record. The superior court issued a peremptory writ of mandate ordering the department to issue a certificate of exemption for the full-body scanner.

### Contentions

In this appeal, the Department of Health contends that: (1) in granting a certificate of exemption the department may sever from the application and consider as a separate project an article of diagnostic equipment that was not in fact included in the total project prior to September 9, 1976; (2) the proper standard of review under Code of Civil Procedure section 1094.5, subdivision (c), is the substantial evidence test; (3) the record supports the department's "finding" that the scanner was not a part of the

hospital's expansion project prior to September 9, 1976; and (4) the trial court erred in ordering the department to issue the certificate of exemption rather than remanding the matter to the department. The hospital counters with the contention that the appeal is frivolous and seeks sanctions.

### Standard of Judicial Review

Our threshold question is the standard of review to be applied to the record of the case at bench. If the standard is the "independent judgment test" by which the reviewing trial court independently determines issues of fact by reference to the administrative record, then our function is limited to ascertaining the presence or absence of evidence in that record to sustain the trial court's findings. If they are supported by substantial evidence, they are binding on appeal. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33]; *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].) If, however, the standard is the "substantial evidence test" by which the administrative determination is reviewed for factual sufficiency by reference to the presence or absence of substantial evidence to support the administrative findings, then our function, "like that of the trial court, is to determine whether the [administrative] record is free from legal error." (*Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 916.)

We deal here with review of an adjudicatory function of an agency of legislative origin. As to those agencies, "If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under [Code of Civil Procedure] section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the [administrative] findings are supported by substantial evidence in light of the whole record." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29].)

A right affected by an administrative decision is fundamental and vested so as to be judicially reviewable by the independent judgment test

when the "right . . . has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation' . . . ." (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 34.) A right may be legitimately acquired or otherwise vest by administrative action, as for example the issuance of a drilling permit (*Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 797-798 [194 P.2d 148]), or other permit to perform work on property. (See *San Diego Coast Regional Com.* v. *See the Sea, Limited* (1973) 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129]; *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791, 798 [132 Cal.Rptr. 386, 553 P.2d 546]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487].) ■ The right is of a fundamental nature from the standpoint of its economic impact where substantial work has been done in reliance upon the permit previously granted. (*Transcentury Properties, Inc.* v. *State of California, supra,* 41 Cal.App.3d 835, 844.) Conversely, there is no vested right to obtain a permit from government to perform an endeavor (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 173-174 [223 P.2d 1]) unless the permit is sought to engage in activity of a vital nature such as the right "to continue the practice of one's trade or profession." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-145 [93 Cal.Rptr. 234, 481 P.2d 242], fn. omitted.) In applying the distinction, our Supreme Court has manifested "slighter sensitivity to the preservation of purely economic privileges." (*Id.,* at p. 145.)

■ The case at bench does not fit neatly into the categories of the precedential cases. It involves neither an assertion of a right to proceed under a governmental permit already issued nor a necessary permit sought to allow a proposed endeavor to proceed. Rather, the hospital seeks a statutory exemption from a permit requirement.

The rationale of the precedential cases leads to the conclusion that the right to an exemption which is here sought is neither vested nor fundamental. The hospital has no vested right to operate free of "reasonable governmental rules and regulations." (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23 [112 Cal.Rptr. 872].) No prior governmental action has authorized expansion including the EMI scanner. The right asserted is the economic privilege to expand

and the hospital may continue to operate although the privilege to expand is denied.

We hence conclude that the appropriate standard of review here applicable is the "substantial evidence test."

### Administrative Findings

Determination of the applicable standard of review does not end the matter. Although the agency action is reviewed by the test which determines the existence or absence of substantial evidence to support the agency findings, "implicit in [Code of Civil Procedure] section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 515.)

Here the Department of Health has not supplied the necessary bridge. In initiating the proceedings, the department "severed" the full-body scanner from the remainder of the application for exemption. The administrative findings made at the conclusion of the hearing state: "The project was for the acquisition of an EMI Full Body Scanner" and then find that the project as so defined was not commenced within the period required for the "grandfather" exemption.

The findings are susceptible of two equally possible meanings. The hearing officer and agency may have determined that the agency had the unqualified power to split an exemption application into component parts constituting separate projects so that the hearing was limited to consideration of the split "separate" project as determined by the Department of Health. Equally, the hearing officer and agency may have determined as a matter of fact that the EMI scanner was not part of the project contemplated by the hospital in its original design but was an after-thought.

If the agency adopted the first approach, its determination rejecting the certificate of need was erroneous. "Project" as used in the statutory scheme is defined in Health and Safety Code section 437.10. Nothing in the statutory scheme empowers the Department of Health to treat separately the component parts of that which is a single project in fact. If the agency adopted the second approach, its determination must be

accepted by reason of the substantial evidence test because then the issue will have been determined as one of fact. The agency's failure to specifically find on the issue of the factual inclusion of the full-body scanner in the "project" for which exemption was sought thus fails to bridge the analytical gap between the raw evidence and the ultimate administrative decision and thus precludes intelligent judicial review.

### Disposition

The judgment is reversed with directions to the trial court to grant a peremptory writ of mandate remanding the matter to the Department of Health for further findings of fact on the issue of whether the project for which exemption was sought by the plaintiff included the EMI full-body scanner. Our disposition of the matter of itself requires rejection of plaintiff's claim that the appeal is frivolous.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied December 12, 1978, and respondent's petition for a hearing by the Supreme Court was denied January 11, 1979.