[Crim. No. 11432. Fourth Dist., Div. One. Oct. 17, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE VINSON KNIGHT, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Barbara Smith for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (Gerald), P. J.**—Clarence Knight was convicted of first degree murder, grand theft of an automobile, and eight counts of robbery. He appeals the judgment.

In the late afternoon of January 15, 1979, Knight and his younger half-brother Parrish Chambers met Charles Turner and a man named "Feissy." Chambers drove them in a stolen silver Mustang to a gas station, which Knight and Turner robbed. Chambers then drove them to a nearby supermarket, where Knight and Turner snatched purses from two customers. The customers saw the type of car they used. Going home, Chambers blocked a car stopped at an intersection, and Knight and Turner robbed its occupants, Loring Clark, his wife Charlotte, and

their nine-year-old son. During the robbery, Knight shot and killed Mrs. Clark.

On January 23, Knight turned himself in to the San Diego police. The detectives assigned to his case told him of his *Miranda* rights, and he agreed to talk to them. However, after the detectives played tape recordings of statements which Chambers and Turner had given them, Knight said he would remain silent. The detectives then left him alone. They returned a few minutes later to say they knew he had confessed to his mother and she would testify against him at his trial. In response to Knight's question, they told him he would go to prison if convicted. He then voluntarily confessed.

About two hours after completing his confession, Knight arrived at the search and receiving area of the jail where Deputy Kim Quaco, whom he knew well from an earlier stay in the jail, was on duty. Quaco knew nothing about Knight's case. Knight told Quaco he wanted to talk to him, but the deputy told him to wait until after he had been searched. About 20 minutes later, Knight again asked Quaco to hear him, but Quaco again put him off, telling him to wait until after Quaco's dinner break. When the deputy returned 20 to 25 minutes later, Knight renewed his request once again and Quaco said he would listen. Knight told the deputy he had decided not to talk to anyone until he saw Quaco; he expressed concern about his "little brother" Chambers, whom he wanted to protect. Knight again confessed his role in the murder, and to stealing the Mustang. During their conversation, Quaco did not question Knight, nor did he attempt to elicit the confession. He merely told Knight he would listen to whatever Knight had to say.

█ At trial, the court excluded Knight's first confession, finding it inadmissible because Knight had invoked his right to remain silent (*Miranda* v. *Arizona (1966)* 384 U.S. 436, 472-474 [16 L.Ed.2d 694, 722-724, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Pettingill* (1978) 21 Cal.3d 231, 246 [145 Cal.Rptr. 861, 578 P.2d 108]; *People* v. *Fioritto* (1968) 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625]). However, the court permitted Deputy Quaco to testify about Knight's second confession. Was this confession admissible? Yes.

█ A volunteered statement—not in response to police interrogation—is admissible, even if a defendant has earlier asserted his right to remain silent (*Miranda* v. *Arizona, supra*, 384 U.S. 436, 478 [16 L.Ed.2d 694, 725-726]; *People* v. *McDaniel* (1976) 16 Cal.3d 156, 172

[127 Cal.Rptr. 865, 597 P.2d 124]; *People* v. *Fioritto, supra,* 68 Cal.2d 714,.719). If, however, an incriminating statement follows an improperly obtained confession, the second confession is presumed to be the product of the first (*People* v. *Johnson* (1969) 70 Cal.2d 541, 547 [75 Cal.Rptr. 401, 450 P.2d 43 A.L.R.3d 366]; *People* v. *Spencer* (1967) 66 Cal.2d 158, 168 [57 Cal.Rptr. 163, 424 P.2d 715]). Under these circumstances, the prosecution has the burden of proving the second statement was not the product of the first by showing a break in the chain of causation between the two statements (*People* v. *Spencer, supra,* 66 Cal.2d 158, 168). Breaking the chain of causation requires some independent intervening act which makes the second confession "sufficiently an act of free will to purge the primary taint" of the first, unlawfully obtained confession (*People* v. *Johnson, supra,* 70 Cal.2d 541, 546-547; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal. Rptr. 409, 439 P.2d 321]). The existence of an independent motive to confess is relevant to show the second statement was a product of a defendant's free will (*People* v. *Johnson, supra,* 70 Cal.2d 541, 550).

The trial court concluded Knight's second confession was not the product of the first but was instead the result of his independent decision to talk to Deputy Quaco. After the first confession, Knight made the decision not to talk to anyone further about the subject. He changed his mind only when he arrived at the search and receiving area and saw a familiar person—Deputy Quaco. Knight asked to speak to Deputy Quaco 3 times over a period of at least 45 minutes before the deputy agreed to listen. Knight had an independent motive for confessing, for he believed he would protect his younger brother by doing so. Substantial evidence supports the trial court's conclusion Knight's confession to Deputy Quaco resulted from his own independent decision to talk to the deputy, and the trial court's finding the second confession was not the product of the first. The trial court correctly admitted Deputy Quaco's testimony.

Knight unmeritoriously contends his conviction of the purse snatching must be reversed because the testimony of his accomplice Chambers was insufficiently corroborated.

Section 1111 of the Penal Code precludes a conviction based solely on the uncorroborated testimony of an accomplice. Slight independent evidence suffices. It is sufficient if it tends in some degree to implicate the defendant (*People* v. *Perry* (1972) 7 Cal.3d 756, 769 [103 Cal. Rptr. 161, 499 P.2d 129]). Corroborating evidence is sufficient if it

substantiates enough of the accomplice's testimony to establish his credibility (*People* v. *Lyons* (1958) 50 Cal.2d 245, 257 [324 P.2d 556]).

■ Here the two victims of the purse snatching testified they were at the market in the late afternoon or early evening of January 15; two black men took their purses and drove away in a silver car. Moreover, Chambers' testimony as a whole had ample corroboration to establish his credibility. Indeed, Knight does not challenge the sufficiency of the independent evidence of the other crimes.

The trial court properly instructed the jury on corroborating an accomplice testimony (CALJIC No. 3.12). The additions which Knight now says the court should have included were not requested by him at trial.

Judgment affirmed.

Cologne, J., and Work, J., concurred.

A petition for a rehearing was denied October 31, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 14, 1981.